## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**YFE, INC.,**

        **Plaintiff,**

    **v.**

                                     **Civil Action No. _____**

**ASPEN SPECIALTY INSURANCE
COMPANY; and FAIRMONT
INSURANCE BROKERS, LTD.,**

        **Defendants.**

_____/

## COMPLAINT

Plaintiff YFE, Inc., (d/b/a 18th Street Lounge) ("YFE" or "Plaintiff"), by and through undersigned counsel, states the following as its complaint against Defendants Fairmont Insurance Brokers, Ltd. ("Fairmont"), and Aspen Specialty Insurance Co. ("Aspen") (together, the "Defendants"):

## INTRODUCTION

YFE brings this action because it purchased liability coverage that should provide it defense and indemnification for an underlying lawsuit in which YFE has been named as a defendant, entitled *Burney v. YFE, Inc., et al.*, No.2019 CA 004087 B (D.C. Super.). *See* Ex. A (the "Underlying Action").

The Underlying Action alleges negligence by YFE in connection with an altercation at YFE's place of business and is well within the scope of standard term liability policies. The Underlying Action is based on an occurrence alleged to have taken place on June 25, 2016. YFE paid Defendant Fairmont to obtain, *inter alia*, Comprehensive General Liability insurance

coverage ("CGL") for the period including the date of the occurrence (Ex. B) and in return, Fairmont provided YFE a Certificate of Liability Insurance, effective July 8, 2015 through July 8, 2016. *See* Ex. C (the "Certificate of Insurance"). The insurer is identified as Defendant Aspen.

In response to receipt of timely notice of the Underlying Action, Aspen denied coverage. First, Aspen claimed that the address of the occurrence was not a "covered location," even though YFE has no other location. Then, Aspen claimed it sent YFE a letter canceling coverage in May 2016. Now, Aspen claims it never agreed to insure YFE in the first place. Aspen claims YFE was not included on a group policy brokered through an intermediary between Fairmont and Aspen, Hospitality Supportive Systems, Inc. ("HSS"). However, Aspen has refused to confirm that it has no policy covering YFE during the relevant time period; instead, it relies entirely the alleged absence of YFE from an HSS policy that Aspen refuses to produce. For its part, Fairmont cannot produce any policy corresponding to the Certificate despite YFE's numerous requests.

There is no dispute that YFE paid Fairmont for the coverage. Nor can there be any dispute that Fairmont and Aspen received and have retained YFE's premiums, including the portion of the premiums allocable to the CGL policy Fairmont certified existed. Whether from Aspen or Fairmont, YFE is owed defense and indemnification.

## NATURE OF ACTION

1. YFE seeks a judicial determination of Fairmont and/or Aspen's duty to defend and indemnify YFE pursuant to a policy by Aspen Specialty Insurance Co. Policy Number CR0038P14 (the "Aspen Policy"), or some other policy, and damages incurred and to be incurred due to Defendants' unlawful conduct.

2.     YFE respectfully requests (a) a declaration that Aspen and/or Fairmont must defend the Underlying Action, (b) an award of attorneys' fees and litigation expenses incurred to date and to be incurred in that case, and (c) an award of attorneys' fees and litigation expenses incurred in this case. Because resolution of the Underlying Action is not necessary to a determination of Aspen and Fairmont's duties to YFE, this action is timely and ripe for decision.

**PARTIES**

3.     YFE is a corporation organized and existing pursuant to the laws of the District of Columbia with is principal place of business at 1212 18th St., NW, Washington, DC 20036.

4.     Aspen Specialty Insurance Co. is property and casualty insurance company licensed to do business in the District of Columbia. Aspen is headquartered at 175 Capital Boulevard, Suite 100, Rocky Hill, Connecticut 06067.

5.     Fairmont is an insurance brokerage company located at 1600 60th Street, Brooklyn, New York 11204. Upon information and belief, Fairmont regularly does business in the District of Columbia.

**JURISDICTION AND VENUE**

6.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     Pursuant to 28 U.S.C. § 2201, an actual case and controversy that can be resolved by a judgment of this Honorable Court exists between YFE and the Defendants.

8.      This Honorable Court has personal jurisdiction over Aspen pursuant to Fed. R. Civ. P. 4 and D.C. Code §§ 13-423(a)(1), (3), and/or (6) because Aspen contracted to insure YFE in the District of Columbia, conducts business in the District of Columbia, caused tortious injury in the district of Columbia, and this action arises out of Aspen's activities in the District of Columbia.

9.      This Honorable Court has personal jurisdiction over Fairmont pursuant to Fed. R. Civ. P. 4 and D.C. Code §§ 136-423(a)(1), (3), and/or (6) because Fairmont contracted to provide insurance brokerage services to YFE in the District of Columbia, conducts business in the District of Columbia, caused tortious injury in the District of Columbia,  and this action arises out of Fairmont's business activities in the District of Columbia.

10.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because the subject policies insured risks located in this District and the events at issue in the case took place in this District.

## **FACTS**

11.      YFE operates a tavern doing business as the 18th Street Lounge located at 1212 18th St., NW, Washington, DC 20036 (the "Lounge").

12.      The Underlying Action is grounded in negligence and alleges personal injuries arising out of an altercation between an individual and a Lounge employee that occurred at the Lounge on June 25, 2016. *See* Ex. A.

13.      Notice of claim was tendered to Aspen at the time of the occurrence. At that time Aspen did not raise any defense to coverage, whether based on cancellation of

the underlying policy, the purported absence of the 18th Street address as a covered loca-
tion, or the purported absence of YFE as a named insured on the Aspen Policy.

14.     After the Underlying Action was filed, on July 30, 2019 YFE tendered a notice
of claim to Fairmont pursuant to the Aspen Policy.

15.     On August 29, 2019, Aspen denied coverage based on, *inter alia*, the assertion
that Aspen cancelled the policy prior to the incident giving rise to the Underlying Action and
the contention that 1212 18th St., N.W., Washington, D.C. was not a covered location for
YFE under the policy.

16.     Since no cancellation notice was ever received by YFE, it sought proof of can-
cellation from Aspen.

17.     Aspen has never produced proof of cancellation.

18.     In or around December 2019, Aspen changed its position and presently denies
coverage on a wholly inconsistent basis: that no policy covering YFE ever existed, notwith-
standing the contrary information stated in the Certificate of Insurance.

19.     Accordingly, YFE sought a sworn statement from Aspen that it did not insure
YFE. Instead, on December 19, 2019, YFE received a *qualified* affidavit from Gregory Irons,
Senior Vice President at Aspen: "Based on … review and to the best of my knowledge, YFE
…are not insureds, additional insureds, or additional named insureds under any policy issued
by Aspen in the HSS program." *See* Ex. D.

20.     Aspen has refused to provide an unqualified affidavit stating YFE is not insured
under any Aspen policy.

21.     Fairmont and YFE agreed that YFE would pay Fairmont to obtain, *inter alia*, liability coverage for the period of the Underlying Action.

22.     YFE performed its duties under the agreement by paying Fairmont a $6,500 down payment and subsequent premium payments through a finance company.

23.     YFE also discharged its duties to the Defendants to provide them timely notice of the occurrence and of the Underlying Action and to cooperate in its defense.

24.     Upon information and belief, YFE paid over $42,000 in premiums between July 8, 2015 and July 8, 2016, of which a portion thereof was allocable to the CGL coverage Fairmont represented it had procured.

25.     Upon information and belief, Fairmont accepted YFE's payments and retained a commission from each such payment.

26.     Fairmont provide YFE a Certificate of Insurance indicating it had procured for YFE comprehensive general liability coverage for the period of the Underlying Action.

27.     The Certificate identified Aspen as the insurer.

28.     Upon information and belief, Aspen received a portion of each payment made by YFE in return for providing YFE with CGL coverage at the time of the occurrence.

29.     The Certificate correctly identifies YFE's location.

30.     The Certificate stated Aspen agreed to provide YFE defense and indemnity for liability claims, including claims such as those in the Underlying Action.

31.     The Certificate of Insurance does not reference a shared policy, nor does it identify HSS.

32.     The Certificate of Insurance represents that YFE had $1 million in Commercial General Liability Coverage under Policy No. CR0038P14, effective between July 3, 2015 and July 3, 2016. The general liability limits are $1 million per occurrence, $2 million in aggregate coverage, and $25 million in umbrella coverage. *See* Ex. C.

33.     Fairmont produced the Certificate of Insurance to YFE on or about July 8, 2015. YFE reasonably believed it was effective at the time of issuance. Subsequent to its delivery and through and until it received information from Aspen in December 2019 to the contrary, YFE was entitled to rely on the Certificate of Insurance and believed it was covered for, *inter alia*, the Underlying Action.

34.     Upon information and belief, Fairmont did not receive a copy of the Aspen Policy reflected in the Certificate of Insurance.

35.     Because it did not receive the Aspen Policy, Fairmont knew or should have known that there was a question as to whether coverage had in fact been secured on behalf of YFE, but Fairmont apparently did not investigate or remedy the situation.

36.     YFE continues to incur attorneys' fees and other expenses in Underlying Action, and can be expected to incur considerably greater expenses, including expenses for discovery, motion practice, and trial.

**COUNT ONE**
**BREACH OF CONTRACT**
**(Against Aspen)**

37.      YFE incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

38.      Upon information and belief, Policy Number CR0038P14, as reflected in the Certificate of Insurance, provides CGL coverage to YFE.

39.      Upon information and belief, Policy Number CR0038P14 contains standard terms and conditions approved by state insurance agencies and that cover claims such as those brought against YFE in the Underlying Action.

40.      In the alternative, upon information and belief, Aspen agreed to provide YFE liability coverage under a policy other than Policy Number CR0038P14 and that policy contains standard terms and conditions approved by state insurance agencies and covers claims such as those brought against YFE in the Underlying Action.

41.      Upon information and belief, the Underlying Action contains allegations against YFE that are within the scope of Aspen's duty to defend and indemnify YFE

42.      Upon information and belief, Aspen has a duty to defend and indemnify YFE for the Underlying Action.

43.      YFE has performed each and every one of its duties under the Policy.

44.      Aspen has refused to provide YFE with a defense to or indemnity for the Underlying Action is in breach its agreement with YFE.

45.       Aspen's breach of the Policy is material and continuing.

46.      As a direct, proximate, and foreseeable result of Aspen's breach of the contract, YFE has suffered and will continue to suffer damages.

## COUNT TWO
## BREACH OF CONTRACT
### (Against Fairmont)

47.     YFE incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

48.     YFE and Fairmont entered into a valid and enforceable contract pursuant to which Fairmont was to obtain Comprehensive General Liability coverage for YFE, including the 18th Street Lounge, in return for YFE's payment of premiums to Fairmont.

49.      YFE paid the premiums and Fairmont returned a Certificate of Insurance.

50.     If Aspen did not issue a policy to Fairmont as reflected in the Certificate of Insurance, then Fairmont breached its contract with YFE.

51.     Fairmont's breach of its policy with YFE is material.

52.     If Fairmont did not obtain the coverage for which it received payment from YFE, then Fairmont owes YFE defense and indemnity for the Underlying Action.

53.     As a direct, proximate, and foreseeable result of Fairmont's breach of contract, YFE has suffered and will continue to suffer damages.

## COUNT THREE
## PROFESSIONAL NEGLIGENCE
### (Against Fairmont)

54.     YFE incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

55.     Fairmont owed a duty to YFE to exercise the degree of care and skill ordinarily exercised under similar circumstances by members of Fairmont's profession performing similar services and practicing in the same or similar locality.

56.     Fairmont breached its duty to YFE by negligently failing to secure binding insurance coverage to YFE.

57.     Fairmont never received the Aspen Policy from Aspen.

58.     Fairmont never informed YFE that it did not have a policy from Aspen.

59.     Fairmont never informed YFE that Aspen had cancelled any relevant policy.

60.     After the Underlying Action was filed, YFE asked Fairmont for a copy of the policy referred to in the Certificate of Insurance; Fairmont failed to provide YFE with the policy.

61.     Fairmont knew or should have known that there was a gap in coverage notwithstanding its receipt and acceptance of premiums from YFE.

62.     It was reasonably foreseeable to Fairmont that its professional negligence would cause YFE to suffer damages of the type described herein.

63.     As a direct, proximate, and foreseeable result of Fairmont's breach of its duty of care, YFE has suffered and will continue to suffer damages.

## COUNT FOUR
## <u>UNJUST ENRICHMENT</u>
### (Against Both Defendants)

64.     YFE incorporates the preceding paragraphs of this Complaint as if fully set forth herein except for those allegations alleging a contract.

65.     Aspen and Fairmont knew at all relevant times the terms of each of their respective engagements with YFE, that is, YFE's desire to procure general liability coverage for its operations at the Lounge.

66.     Accordingly, both Aspen and Fairmont accepted payments from YFE for the purpose of securing liability coverage to YFE for the express purpose insuring YFE's operations at the Lounge.

67.     If the Court does not find for the Plaintiff in Counts I, II, or III, Plaintiff pleads in the alternative that it is entitled to recover from Defendants for unjust enrichment.

68.     Allowing Defendants to retain the benefits they received from YFE without providing YFE coverage for the Underlying Action would be unjust and against equity.

69.     Accordingly, Defendants, and each of them, should return to YFE the premiums they received from YFE.

**WHEREFORE**, YFE respectfully requests this Honorable Court enter judgment in its favor and against Aspen and Fairmont as follows:

A.     Declare Aspen and/or Fairmont owes YFE a defense in the Underlying Action;

B.     Declare Aspen and/or Fairmont owes YFE indemnification for damages, if any, for which YFE is held liable in the Underlying Action;

C.     Award YFE its attorneys' fees and litigation expenses incurred in the Underlying Action;

D.     Award YFE its attorneys' fees and litigation expenses incurred in this case; and,

E.     Such other relief as this Honorable Court deems just and appropriate.

## JURY DEMAND

YFE demands a trial by jury for any issue so triable.

March 30, 2020                                 Respectfully submitted,


                                               **/s/ Steven M. Oster**
                                               Steven Oster (D.C. Bar No. 376030)
                                               David Lawler (D.C. Bar No. 497379)
                                               **OSTER MCBRIDE, PLLC**
                                               1320 19th Street, N.W., Suite 601
                                               Washington, DC, 20036
                                               soster@ostermcbride.com
                                               dlawler@ostermcbride.com

                                               *Attorneys for YFE, Inc.*